PATRICK JOSEPH CONNERS, an Infant, by Guardian, etc.,
Respondent, *v.* WILLIAM WALSH, Appellant.

In an action to recover damages for injuries to plaintiff inflicted by defend-
ant, the following facts appeared: Plaintiff, with several other boys,
went upon defendant's premises for the purpose of passing through
them from one street to another, without any mischievous purpose
or design to injure him or his premises, and without actually injur-
ing them or creating any considerable annoyance; defendant, without
warning, threw a piece of brick at them, which hit and seriously
injured plaintiff. There was no defense to the action and the only
question for the jury was the amount of the damages. The court
charged that if they found from the evidence that defendant's act was
malicious they could add to the actual damages sustained something
more by way of punishment — "damages that are called exemplary, or
punitive, or smart money, for the purpose of teaching the defendant
that he must not maliciously and wantonly assault a person." *Held,* no
error; that it was competent for the jury to find that defendant's act
was wanton, reckless and malicious, and to award more than compen-
satory damages.
Where a charge to a jury lays down no erroneous rule of law, but contains
statements which may have improperly influenced the jury, the court
below, in its discretion, may set aside the verdict, but the charge is not
reviewable here.
*Cranston* v. *N. Y. C. & H. R. R. R. Co.* (103 N. Y. 614), distinguished.

(Argued January 28, 1892; decided February 12, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the third judicial department, entered upon an order
made September 8, 1891, which affirmed a judgment in favor
of plaintiff entered upon a verdict and affirmed an order deny-
ing a motion for a new trial.

The following is the opinion in full:

"On the 4th day of July, 1890, the plaintiff and other boys
were playing in one of the streets in the city of Troy, and
fearing a police officer, ran into and through the yard of the
defendant for the purpose of reaching another street. While
making the passage, as the plaintiff and the other boys testified,
the defendant, without giving them any warning whatever, or
saying anything to them, picked up a large piece of brick and
threw it at them, hitting the plaintiff in one of his eyes and
severely injuring him. Subsequently this action was com-

menced to recover damages for the assault, and a judgment was rendered in favor of the plaintiff, which has been affirmed at the General Term.

"Upon the trial there was absolutely no defense to the action, and the only question for the jury was the amount of damages to be awarded by them.

"The trial judge charged the jury in various forms that the defendant's counsel did not claim that there was any defense to the action; and that charge was acquiesced in, and in no way excepted to.

"After the jury had retired and had been out of court for some time deliberating upon their verdict they came into court and stated to the judge that they had not agreed upon their verdict and that there was no probability of their agreement; whereupon the judge said: 'There is but one question for the jury. You have no right to determine whether the defendant is liable or not; he is liable as a matter of law. The only question is how much. Some jury has got to decide it. That is the only question, and that is a question that both sides concede — it is simply a question of how much. While no man should yield an honest, conscientious conviction, he should be sure that it is an honest, conscientious conviction while he adheres to it, and he should be willing to listen to fair argument on the other side and to endeavor to arrive at an honest and fair conclusion in the case. I am unable to see any reason whatever why this jury should not agree upon some sum that the plaintiff should have here, because both sides concede that the plaintiff is entitled to something, and the law is and the evidence is that the plaintiff is entitled to something.'

"The jury then again retired and upon the next day returned into court saying that they had not agreed; that there was no probability of their agreeing, and that the only question upon which they differed was upon the question of damages. The judge then remarked: 'There is something very strange about that;' and a juror said 'I think so myself.' The judge then said: 'Any juror who supposes that the plaintiff will not recover in this case some time or other makes a mistake, because sooner or later the plaintiff will have a verdict. The defendant concedes that the plaintiff will have

a verdict and is entitled to a verdict. The defendant agrees that the plaintiff must have some verdict, and that is the law. Any juror attempting to do otherwise does not do the defend-ant any favor but puts him to a large amount of increased costs, because sooner or later the plaintiff will have a verdict in this case, and upon the concession of the defendant. Jurors have the physical power to disregard the evidence and the instructions of law, but they do the law or the community or justice no credit; quite otherwise.' The counsel for the defendant then said : ' We interpose an exception to that part of your charge, and also where you say the plaintiff is entitled to smart money.' Whereupon the jury again retired, and shortly thereafter returned with a verdict in favor of the plaintiff. The judge had instructed the jury that if they found from the evidence that the act of the defendant was wanton and malicious they had the right to add to the actual damages which the plaintiff had sustained, 'something more by way of punishment — damages that are called exemplary, or punitive, or smart money, for the purpose of teaching the defendant that he must not maliciously and wantonly assault a person.' It is now claimed that there was no evidence in this case which authorized the jury to give what are called exemplary damages. We think there was. The plaintiff and the other boys without, so far as the evi-dence discloses, any mischievous purpose, or any design to do any injury to the defendant or his premises, and without actually injuring them, or creating any considerable annoy-ance to him, were passing through his premises, and without any warning he threw a large piece of brick at them, inflict-ing a serious injury upon the plaintiff. It was competent for the jury to find upon this evidence that the act of the defend-ant was wanton, reckless and malicious, and, therefore, to award more than compensatory damages. While the remarks of the judge, made to the jury before they retired for the last time, were somewhat urgent, and were well calcutated to con-strain them to agree upon a verdict, they did not contain any erroneous rule of law, and, therefore, the exception to them on the part of the defendant presents no question for review here. While these remarks contained no erroneous rule of

law, yet if the court below could see that they improperly influenced the jury, it could, in its discretion, set aside the verdict. But it has frequently been held that such remarks are not the subject of review in this court. ( *White* v. *Calder*, 35 N. Y. 183; *Caldwell* v. *N. J. Steamboat Co.*, 47 id. 283.) This case is unlike that of *Cranston* v. *N. Y. C. & H. R. R. R. Co.* (103 N. Y. 614). There, after the jury had retired to consider their verdict, they came into court, and one of them said that there was no probability of their agreeing. The court replied: ' You must get together;' adding, ' no juror ought to remain entirely firm in his own conviction one way or the other until he has made up his mind beyond all question that he is necessarily right, and the others necessarily wrong.' It was held that this was not a correct statement of the law; that to sustain the instruction would be to cast upon the defendant in a civil action a burden quite as heavy as that which rests upon the prosecution in a criminal case, and perhaps still more onerous. Therefore, we sustained the exception there taken and reversed the judgment. Here the remarks of the judge embody no erroneous rule of law.

" The judgment should be affirmed, with costs."

*R. A. Parmenter* for appellant.

*Lewis E. Griffith* for respondent.

EARL, Ch. J., reads for affirmance.
All concur, except MAYNARD, J., taking no part.
Judgment affirmed.

---

In the Matter of the Probate of the Last Will and Testament of JOSEPH GALL, deceased.

(Argued January 28, 1892; decided February 12, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 12, 1890, which affirmed a decree of the surrogate of Kings county dismissing proceedings for the probate of the will of Joseph Gall, deceased.